### DICKINSON *v.* ROBERTSON.

### Opinion delivered June 21, 1920.

1. CARRIERS—DISCRIMINATION IN FURNISHING CARS.—Where the evidence established that, owing to the exigencies of war, a carrier was unable during certain months to furnish the usual amount of cars to its shippers, but that it was able to fill forty to seventy-five per cent. of the orders received for cars, proof that the carrier furnished only twenty-two per cent. of the cars ordered by plaintiff during those months justified submission to the jury of the issue whether the carrier had discriminated against plaintiff.

2. CARRIERS—DISCRIMINATION IN FURNISHING CARS.—The liability of a carrier, under Kirby's Digest, § 6408, for failure to furnish cars is founded, not so much on the inadequacy of the facilities at his command to supply the demands of shippers as on his refusal or failure to make the facilities which he has available to all who are similarly situated, without discrimination or delay.

3. Carriers—failure to furnish cars—damages.—In an action for damages for failure to furnish cars to a shipper, where the shipper, would not have been put to expense in loading cars or in transportation to destination, the measure of damages was the difference between the market value of the goods at the point of shipment and the market value at point of destination.

Appeal from Prairie Circuit Court, Southern District; *George W. Clark,* Judge; affirmed.

*Thos. S. Buzbee, Geo. B. Pugh* and *Chester L. Johnson,* for appellants.

1. This suit is the result of the car shortage in the fall of 1916, caused by the unprecedented movement of freight to the seaboards by reason of the war. The law is well settled in this State that carriers, while bound to provide reasonable facilities for shippers of goods, are not required to provide in advance for an unprecedented and unexpected rush of business as is shown here and will be excused for delay until the emergency can, in the regular course of business, be removed. 77 Ark. 357; 217 U. S. 136. The defendant was not liable under the evidence here. There was no discrimination. 77 Ark. 357.

2. According to the testimony plaintiff did not suffer any pecuiary loss from defendant's failure to furnish cars. The loss is purely speculative and prospective, and the court erred in its instructions as to the measure of damages.

*Chas. B. Thwealt* and *Emerson, Donham & Shepherd,* for appellee.

The law of this case is settled by 77 Ark. 357; 120 *Id.* 119; 105 *Id.* 415; 81 *Id.* 373; 85 *Id.* 311, and the court followed the law in its instructions. The measure of damages was correctly stated by the court in instruction No. 3. 3 Hutch. on Carriers, par. 1366; 73 Ark. 112; 74 *Id.* 358.

Wood, J. Appellee was engaged in the business of buying and selling hay during the months of September, October, November and December, 1916. Appellee

ordered of appellant 125 cars to enable him to ship the hay from various stations on appellant's railroad. He was furnished 27 cars. The box cars, such as appellee ordered, would hold from ten to fifteen tons of hay, and if appellant had furnished the cars ordered by appellee for the shipment of the hay, he would have realized a profit at the current market price of hay during that time of from 50 cents to $1.50 per ton, which amounted in the aggregate to the sum of $1,173, all of which he lost by reason of appellant's refusal and failure to furnish the cars as ordered by the appellee.

Appellee instituted this action against the appellants, and alleged substantially the above facts in his complaint, and filed therewith as exhibit "A" an itemized statement of the number of cars ordered during the time mentioned; the number furnished; the price paid per ton when purchased and price paid for same when sold. He alleged actual damage in the above sum. Appellee also alleged that during the time mentioned the appellants were furnishing cars to others and in so doing discriminating against the appellee. On account of the alleged discrimination appellee prayed that he might have judgment for double the amount of the actual damages he had sustained.

The appellants denied the material allegations of the complaint and set up that the failure to furnish appellee all the cars alleged to have been ordered by him was caused by reason of the war activities of German submarines which resulted in a lack of sufficient facilities on the Atlantic seaboard of unloading cars promptly upon reaching the ports, which deprived the appellants of the control and use of their cars; that appellant's freight equipment was further overtaxed because of the increase of the price of cotton in 1916 and an early harvest of that crop; that appellee's business was mostly interstate and to have furnished him with all the cars ordered at the time the orders were placed would have interfered with appellant's interstate com-

merce and would have resulted in giving preference to appellee's intrastate business and thus would have discriminated against those making interstate shipments as well as against others who were making intrastate shipments, in violation of the laws of the State of Arkansas and also of the United States.

The testimony of the appellee and other witnesses introduced in his behalf tended to establish the facts as above set forth and as alleged in appellee's complaint. Appellee's testimony shows that he ordered 61 cars during the month of September and received 5 or 6. In October he ordered 27 cars and got 3; in November he ordered 25 cars and received 5 or 6; in December he ordered 21 cars and got 9. Of the 125 cars ordered he received 27 cars. Other people were getting cars for the shipment of their hay after appellee had placed his orders for the cars and at the same time cars were refused him. He took the matter up with the local agent almost daily and also with the superintendent of the car service. Appellee agreed to handle about 65 tons of hay of one Fisher, paying him the market price for same, but was compelled to cancel his contract with Fisher because appellee could not get cars to ship the same.

The testimony of witness Fisher on behalf of the appellee corroborated the testimony of the appellee as to this transaction, and his testimony further shows that, after delivering three cars of hay which he had contracted to sell to the appellee, appellee could not get any more cars, and he then sold the balance to one Sims, who got cars. The first car load was sold to Sims on the 17th of December and shipped about the 19th. The next car was sold on the 30th and shipped January 1st.

The testimony of appellants' local agent, through whom appellee ordered most of the cars, was to the effect that appellant was able to furnish 50 to 75 per cent of the cars ordered through him. The testimony of appellant's superintendent of car service was as follows: "We were able to take care of only 40 to 50 per cent. of

the requirements, due to the abnormal amount of business, influenced by war conditions in Europe, and this condition resulted in an unprecedented movement of business to the sea-board and caused the tying up of equipment of western lines at the Atlantic sea-board principally.

The verdict was in favor of the appellee in the sum of $597.37. From a judgment in that sum is this appeal.

The appellant contends that the undisputed evidence shows that there was no negligent failure to furnish cars and no unjust discrimination against appellee in favor of other shippers similarly situated in the furnishing of cars.

The undisputed evidence shows that during the four months that appellee complains of car shortage, the exigencies of war had caused the congestion of eastern ports, and that railroad lines as far west as the Missouri River were congested and held thousands of appellant's cars. In consequence thereof appellant was unable to furnish its shippers the usual amount of cars required to handle the business from its stations which otherwise it was fully equipped to do.

The testimony of appellant's station agent, at Hazen, through whom appellee ordered cars, and the testimony of its superintendent of car service, shows that during the four months involved appellant was able to fill 40 to 75 per cent. of the orders received for cars. The testimony shows that appellee during the months mentioned ordered 125 cars and received 27, or about 22 per cent., whereas, according to the above testimony he should have received from 50 to 94 cars.

It is obvious, therefore, that appellants are in no attitude to complain because the court submitted the issue to the jury as to whether appellants supplied the appellee with the number of cars to which he was entitled according to the percentage which they were able to furnish under the unexpected and extraordinary circumstances.

The evidence set forth above was legally sufficient to justify the court in submitting to the jury the issue as to whether or not appellants had unlawfully discriminated against appellee in favor of Sims, who was also engaged in the business of buying and selling hay at the town of Hazen. The jury were warranted in finding from the above testimony that appellee had contracted to purchase about 65 tons of hay from one Fisher, but which purchase he had to abandon because of appellant's failure to furnish him cars for the shipment of the same; that immediately thereafter Fisher sold the same hay to Sims, who secured cars and loaded it out. The appellee and Sims were similarly situated, as both were engaged in the same business in the town of Hazen.

The testimony shows that appellants furnished from 40 to 75 per cent. of the cars ordered. If Sims received 40 to 75 per cent. of the cars ordered by him, it certainly can not be said as a matter of law that appellee, under similar circumstances, should not have received like treatment at the hands of the appellants. We can not discover any undisputed evidence in the record furnishing a conclusive and satisfactory reason for the seeming preference in favor of Sims in the matter of furnishing him cars. The issue, therefore, as to the discrimination was one which the court properly submitted to the jury for its determination.

In *St. L. S. W. Ry. Co.* v. *Clay County Gin Co.*, 77 Ark. 360, we said: "But the liability of the carrier under the act of March 11, 1899 (Kirby's Digest, § 6804), is founded, not so much on the inadequacy of the facilities at his command to supply the demands of shippers, as on his refusal or failure to make the facilities which he has, available to all who are similarly situated, without discrimination or delay. For the act makes it the duty to furnish, without discrimination or delay. So if the carrier, by reason of some unforeseen and unusual or unprecedented condition in the traffic, is unable to furnish cars for the accommodation of all shippers, he must, in

order to escape liability under this statute, furnish such as he has to all shippers without discrimination or delay.''

Appellants do not urge that there was any error in the instructions of the trial court on the issue as to whether or not appellants failed to furnish cars nor on the issue of unjust discrimination.

We find, upon examination of the instructions, that these issues were submitted under declarations of law in conformity with the doctrine announced by this court in *St. L. S. W. Ry. Co.* v. *Clay County Gin Co., supra; St. L., I. M. & S. Ry. Co.* v. *Wynne Hoop & Cooperage Co.,* 81 Ark. 373; *St. L. S. W. Ry. Co.* v. *State,* 85 Ark. 311; *Cumbie* v. *St. L., I. M. & S. Ry. Co.,* 105 Ark. 415; *St. L., I. M. & S. Ry. Co.* v. *Laser Grain Co.,* 120 Ark. 119.

The court, over the objection of appellants, instructed the jury on the measure of damages as follows: ''You are instructed that if you find for the plaintiff in the first count of his complaint, his measure of damages is the difference between the market value of the hay at the point of shipment when cars should have been furnished, and at the point of destination when same should have been furnished.''

There was testimony from which the jury might have found that the appellee purchased and sold the hay f. o. b. at point of shipment. In other words, the jury could have found from the testimony that the appellee was not put to any expense in the loading of cars at point of shipment nor in the transportation from that point to their destination. The instruction, therefore, announced the correct rule for measuring the damages. *St. L. S. W. Ry. Co.* v. *Leder,* 87 Ark. 298.

There is no error. Affirmed.