HINES *v.* MASON.

Opinion delivered May 10, 1920.

1. CARRIERS—DUTY TO FURNISH CARS FOR LIVE STOCK.—A railroad company, when engaged in the business of transporting live stock, is bound to furnish suitable cars therefor upon reasonable notice, whenever it is within its power to do so without jeopardizing its other business.

2. CARRIERS—LIABILITY FOR FAILURE TO FURNISH CARS PROMPTLY.— If a carrier fails to furnish cars within a reasonable time after demand by a prospective shipper, it is liable for the resulting damages.

3. CARRIERS—REASONABLE NOTICE TO FURNISH CARS.—To be reasonable, a notice by a shipper of live stock to furnish cars for shipment must be sufficient to enable the carrier, with reasonable diligence, under the circumstances then existing, to furnish the cars without jeopardizing its business on other portions of its road.

4. CARRIERS—TO NOTIFY SHIPPER OF INABILITY TO FURNISH CARS.— Where a shipper applies to the proper agency of a railroad com-

pany for cars to ship live stock to be furnished at a time and station named, it becomes the duty of the company to inform the shipper within a reasonable time, if practicable, whether it is able so to furnish; and if it fails to give such notice, and has induced the shipper to believe that the cars will be in readiness at the time and place named, and the shipper, relying upon such conduct of the carrier, is present at the time and place named, and finds no cars, the company should respond in damages.

5. CARRIERS—UNPRECEDENTED DEMAND FOR CARS—QUESTION FOR JURY. —Whether there was an unprecedented demand for cars, which the carrier was unable to supply at the time plaintiff applied for cars for shipment of live stock, *held* a question for the jury.

6. CARRIERS—UNPRECEDENTED DEMAND FOR CARS—BURDEN OF PROOF. Where a carrier, sued for failure to furnish live-stock cars, defends on the ground that there was an unprecedented demand for cars, which it was unable to supply, it has the burden of proving such unprecedented demand.

7. CARRIERS — DELAY IN FURNISHING CARS — NOTICE OF DAMAGES.— Damages to cattle suffered by reason of the carrier's delay in furnishing cars for shipment are not covered by a stipulation in the bill of lading that as a condition precedent to recovery of damages under the contract the shipper will give notice to the company before the stock is removed.

8. CARRIERS—NOTICE OF CLAIM.—A letter written for a shipper by his attorney, notifying the carrier of the failure to promptly furnish cars to such shipper, advising the carrier of the damages sustained and giving an itemized statement of the same, was a sufficient compliance with a stipulation in the bill of lading requiring written notice of damages and a verified itemized statement.

9. CARRIERS—NOTICE OF CLAIM—WAIVER.—A provision in a bill of lading for an interstate shipment requiring notice of a claim for damages to live stock shipped can not be waived by the carrier.

10. COURTS—INTERSTATE COMMERCE—FEDERAL DECISIONS CONTROLLING.—Decisions of the United States Supreme Court are controlling on the question whether provisions in a bill of lading for an interstate shipment of stock can be waived.

11. CARRIERS — DAMAGES FOR DELAY IN FURNISHING STOCK CARS.— Where a carrier negligently delayed furnishing cars for live stock, the shipper is entitled to damages which will fairly and reasonably compensate him for the loss, if any, sustained by the negligence, and, in determining such loss, the jury should consider the excess shrinkage and the decline in market from the day the stock should have reached the market without delay up to the time they were put on the market and extra expense, if

any, which the shipper sustained for feed occasioned by the delay.

12. CARRIERS—DELAY IN SHIPMENT OF CATTLE—MEASURE OF DAMAGES. —The damages caused by delay after cattle are in transit is the same, whether the cause of action sounds in tort for an alleged negligent failure to furnish cars, or is an action *ex contractu* for failure to ship promptly.

Appeal from Jackson Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*Troy Pace* and *Ponder & Gibson,* for appellant.

1. Appellee ordered the car October 9, 1918. It was placed for him at Bradford on that date. This was a compliance with the order and he can not recover. In the absence of an agreement to provide cars at a particular time a carrier is obligated to exercise only due diligence to furnish freight cars within a reasonable time. The duty to furnish cars does not include the duty to carry them by special train. 10 C. J. 72-3; 164 Ill. 310; 74 Atl. 227; 8 L. R. A. (N. S.) 115. Where a railroad is not required by the order for cars to furnish them at any particular hour, a delivery at any hour of that day is sufficient. 19 S. W. 53. The Arkansas statute requiring carriers to furnish transportation facilities for the carriage of freight is not intended to make the duty an absolute one, but is simply declaratory of the common law and does not require the carrier to provide in advance for any unexpected rush of business. 77 Ark. 357; 95 S. W. 170; 99 *Id.* 375; 10 C. J. 74; 85 Ark. 293; 105 *Id.* 415; 113 *Id.* 215; 91 *Id.* 198.

If appellant furnished a car within a "reasonable time" it complied with the law. 4 R. C. L., § 426; 241 U. S. 55; 242 *Id.* 120; 44 L. R. A. (N. S.) 643; 141 Pac. 442; 202 Fed. 745.

The court erred in its instructions. The proof was that there was an unprecedented demand for cars which could not have been foreseen or expected. 79 Ark. 62; 10 C. J. 74; 237 U. S. 121; 85 Ark. 293; 77 *Id.* 357.

2. Under the third provision in the bill of lading the cattle were not to be transported within any special

time, nor delivered at destination at any particular hour, and in any suit for loss, damage or delay, negligence shall not be presumed nor inferred from mere delay. Instruction No. 2 for appellant should have been given. The clause in the contract was based on a valuable consideration and was a valid defense. 113 Ark. 688; 114 *Id.* 676; 138 *Id.* 322; 172 *Id.* 353; 128 *Id.* 662.

3. Appellee can not recover on account of failure to comply with the seventh provision of the bill of lading as to notice. 243 U. S. 592; 241 *Id.* 190; *Ib.* 87; 127 Ark. 261; 90 *Id.* 308; 127 *Id.* 261. See, also, 10 C. J. 381-340; Meckie on Carriers, § 2085; 167 N. W. 546.

The burden was on plaintiff to show negligence. 240 U. S. 632; 243 Fed. 91; 22 L. R. A. (N. S.) 975, note; 211 S. W. 103.

4. The court erred in its instruction as to the measure of damages. 10 C. J., p. 77; 4 R. C. L. 389; 96 Ark. 384; 92 *Id.* 573; 126 *Id.* 103; 69 *Id.* 150; 92 *Id.* 574; 127 S. W. 568.

5. The notice required could not be waived. 10 C. J. 340; 241 U. S. 190; 206 S. W. 638; 250 Fed. 272; 201 S. W. 865.

*Boyce & Mack,* for appellee.

1. The jury were properly instructed and the verdict on the ground of negligence is amply supported by the evidence. 131 Ark. 237; 113 *Id.* 215; 132 *Id.* 446; 213 S. W. 777.

2. The stipulation as to notice of damages may be waived. 89 Ark. 154; 66 Cyc. 509.

3. The instruction as to the measure of damages was correct. 48 Ark. 502; 73 *Id.* 112; 92 *Id.* 573; 4 R. C. L., § 389; 113 Ark. 215.

4. The notice was sufficient under the contract and the question of waiver cuts no figure. 241 U. S. 190.

WOOD, J. This suit was instituted by the appellee against the appellant to recover damages alleged to have accrued by reason of appellant's failure to furnish a car for the shipment of cattle.

The appellee alleged, in substance, that he made a demand in writing of the appellant to furnish a car, suitable for shipping cattle, to be placed at Bradford on the 9th of October, 1918; that on the 8th of October he placed his cattle, consisting of 38 head, in the stock pens of Bradford to be loaded in such car for the purpose of shipment by appellant's regular stock train, which passed Bradford station at 2 a. m. every Wednesday morning; that appellant carelessly and negligently failed to furnish the car as demanded by the appellee in time for the regular stock train on the morning of October 9th; that by reason of such failure the appellee was unable to ship his cattle until 5 p. m. of that day; that in consequence thereof appellee's cattle did not reach their destination until 4 p. m. October 11th and were not placed on the market until October 14th, whereas, if the car had been furnished as ordered the cattle would have reached their destination in time for the market of October 10th and 11th; that appellee, by reason of the delay, was compelled to purchase extra feed for the cattle in the sum of $48.19; that there was a shrinkage of at least forty pounds on each head of cattle, which amounted to the sum of $106.40 and a decline in the market value during the delay in the sum of $159.75. Appellee prayed judgment in the sum of $314.34.

The appellant denied all the material allegations of the complaint and set up that at the time the car was ordered appellant did all in its power to furnish the car without discrimination as to other customers or places. It alleged that at the time the car was ordered there was an unprecedented press of business, such that appellant could not by ordinary prudence and the usual course of traffic contemplate. Appellant also set up that there was a provision in the contract of shipment to the effect that the cattle were not to be transported at any specified time or delivered at any particular hour nor in season for any particular market; that in any suit for loss, damage, or delay, negligence should not be presumed

or inferred from mere proof of delay. That the contract also contained the following provision:

"That the second party will notify in writing the nearest station agent or general officer of one of the carriers concerned regarding any loss or injury from delay or otherwise to the live stock covered by this contract in time to enable said agent or officer to examine said stock before it is removed from the unloading pens or mingled with other stock; that if claim should be presented for said loss or injury that written notice to that effect will be filed with the agent at point of origin or destination within ninety days, and verified itemized claim within 125 days after the loss or injury occurred, and that failure to comply with the provisions of this section shall be a bar to recovery for such loss or injury."

Appellant alleged that the appellee failed to comply with the above provision of the contract in time to enable appellant to examine the cattle before they were removed from the unloading pens or mingled with other stock; that the appellee failed to give written notice to the appellant at the point of origin or destination within 90 days of the date of such claim for injury to his cattle; that he also failed to deliver to appellant's agent, at the point of origin or destination, within 125 days after the loss or injury occurred, a verified itemized claim as provided in the contract; that by reason of the appellee's failure to comply with the contract in these particulars he is barred from recovering damages for his alleged loss or injury; that, by the terms of the contract, appellee assumed all expenses of feeding, watering, bedding, or otherwise caring for the cattle.

There was a trial before a jury which resulted in a verdict and judgment in the sum of $200. From that judgment is this appeal.

The appellant first contends that, inasmuch as appellee by written order applied for a car to be placed at Bradford on October 9, 1918, it complied with this

request when it furnished a car for appellee's use at Bradford by 11 a. m. of that day.

The appellee testified that, at the time he applied to appellant's station agent at Bradford for the car, he told the agent that he wanted a car to ship out on the regular stock train. The appellant had two regular stock trains a week on which it transported cattle. These trains came through on Wednesdays and Sundays, somewhere from 1 a. m. until 7 or 8 a. m. They were hardly ever on time. They usually shipped from 3 to 5 a. m. Appellant would not ship out cattle on any other day. Appellee always shipped out on one of these trains.

This is not a suit on a contract between appellant and appellee to furnish a car at a certain time, but it is an action for failure to furnish cars founded on section 6808 of Kirby's Digest.

The law applicable to such cases is declared by us in *St. L. S. W. Ry. Co.* v. *Clay County Gin Co.*, 77 Ark. 357-62, as follows:

"The statute did not intend to make the duty of carriers to furnish transportation facilities an absolute one, for it would be unreasonable to conclude that the Legislature intended to impose upon them duties that under certain conditions would not be anticipated by them, and which it would be impossible to perform, and yet for such nonperformance to exact of them heavy penalties. The statute under consideration is but declarative of the requirements of the common law as to the duty of furnishing transportation facilities. After declaring what that duty is, it prescribed the penalty for its nonperformance. A common carrier for such goods as he undertakes to carry is bound to provide reasonable facilities of transportation to all shippers at every station who, in the regular and expected course of business, offer their goods for transportation. The carrier is not required to provide in advance for any unprecedented and unexpected rush of business, and therefore will be excused for delay in shipping, or even in receiving goods for shipment, until

such emergency can in the regular and usual course of business be removed." See, also, *St. L. S. W. Ry. Co.* v. *Leder*, 79 Ark. 59; *Wynne Hoop & Cooperage Co.* v. *St. L., I. M. & S. Ry. Co.*, 81 Ark. 373.

Now here the proof on the part of the appellee was to the effect that the appellant, in the regular and usual course of its traffic in the transportation of live stock, had two cattle trains a week which usually passed the station of Bradford on Wednesdays and Sundays between one and seven o'clock in the morning. Shippers had the right to rely upon this usual course of business which the appellant had established for the transportation of live stock and to present to appellant their live stock for transportation according to such established course. If appellant negligently refused to accept appellee's cattle when so presented for shipment and to furnish facilities for their transportation, then appellant was liable to the appellee for the damages which were the proximate result of such negligence, that is, for the damages of which the negligence of appellant was the direct and proximate cause.

The law applicable to railroads as common carriers of live stock is accurately stated in 4 R. C. L., sec. 426, p. 964, as follows: "A railroad company, when engaged in the business of transporting live stock, is bound to furnish suitable cars therefor upon reasonable notice, whenever it is within its power to do so without jeopardizing its other business. It necessarily follows that, if it fails to furnish cars within a reasonable time after demand by a prospective shipper, it is liable for the resulting damages. To be reasonable, the notice must be sufficient to enable the carrier, with reasonable diligence, under the circumstances then existing, to furnish the cars without jeopardizing its business on other portions of its road. But where a shipper applies to the proper agency of a railroad company engaged as a common carrier of live stock for cars to be furnished at a time and station named, it becomes the duty of the company to inform the shipper

within a reasonable time, if practicable, whether it is able so to furnish, and if it fails to give such notice, and has induced the shipper to believe that the cars will be in readiness at the time and place named, and the shipper, relying upon such conduct of the carrier, is present with his live stock at the time and place named, and finds no cars, there would seem to be no good reason why the company should not respond in damages."

Without setting out in detail the instructions of the court, it suffices to say, that the trial court was guided by the rules of law above announced, in submitting to the jury the issue as to whether the appellant had negligently failed to furnish a car to appellee and whether such failure was the proximate cause of the damages which appellee sought to recover.

The appellant contends that the undisputed testimony proved that there was an unprecedented demand for cars which the appellant was unable to supply. But after a careful examination of the evidence we are convinced that it was an issue for the jury as to whether or not the demand upon appellant for cars was so sudden and great that appellant could not reasonably have anticipated it and could not by the exercise of ordinary care have supplied the demand. The burden was upon the appellant to make this proof, and the issue was properly submitted to the jury and upon correct instructions. *St. L., I. M. & S. Ry. Co.* v. *Keefe*, 113 Ark. 215. See, also, *Cumbie* v. *St. L., I. M. & S. Ry. Co.*, 105 Ark. 415; *Midland Valley Rd. Co.* v. *Hoffman*, 91 Ark. 198.

The court, among others, gave the following instruction: "The jury are instructed that if they find from the evidence that the plaintiff made a written order for a stock car to be placed at Bradford on October 9, 1918, for the shipment of his stock, and if you further find that no time was specified when it was to be delivered on that date, and the car was delivered on October 9th in pursuance of said order, then the plaintiff would not be en-

titled to recover and your verdict will be for the defendant.''

The appellant contends that the undisputed evidence shows no time was specified when the car was to be delivered on October 9, 1918, and hence under the above instruction the verdict should have been in its favor. But the appellant erroneously assumes that the undisputed evidence shows that no time was specified when the car was to be delivered on October 9, 1918. The appellee testified that he told the appellant's station agent at Bradford, at the time he applied for the car and before the agent wrote out the notice, that he wanted the regular stock train on Wednesday morning which passed Bradford usually from three to five o'clock. There was no prejudicial error to appellant therefore in giving the instruction.

The appellant requested the court to instruct the jury ''that the live stock covered by this contract is not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market, and, in any suit for loss, damage, or delay, negligence shall not be presumed or inferred from mere proof of delay.'' Appellant contends that this clause is a binding one and should be considered by the jury with all the other proof in arriving at a verdict.

The court did not err in refusing to grant this instruction. It was calculated to confuse the jury. For, as we have already stated, this is not a suit on contract for the shipment of cattle, but the issue is one of alleged negligence in failing to furnish facilities for transportation and is ruled by the doctrine announced by this court in *St. L., I. M. & S. Ry. Co.* v. *Keefe,* and in the other cases mentioned *supra.*

Hence, it is unnecessary for us to decide whether the above would be a correct declaration of law in a case bottomed on a contract containing the above provision.

The same may be said concerning the alleged failure of the appellee to comply with the provision of the bill

of lading requiring notice in writing to the nearest station agent or general officer of one of the carriers concerned regarding any loss for injury from delay or otherwise and written notice that a claim will be presented within 90 days and a verified itemized claim within 125 days after the loss or injury. The damages sustained by appellee during the overtime the cattle were in waiting at Bradford were not covered by the contract.

In *St. L., I. M. & S. Ry. Co.* v. *Law,* 68 Ark. 218, we held that damages to cattle suffered by reason of the carrier's delay in furnishing cars for shipment are not covered by a stipulation in the bill of lading that, "as a condition precedent to any damages or any loss or injury to stock covered by this contract, the shipper will give notice to the company before the stock is removed," etc. See, also, *St. L. S. W. Ry. Co.* v. *McNeill,* 79 Ark. 407.

But if we could treat this action as one grounded on an alleged breach of contract for the prompt shipment of appellee's cattle, still appellant, under the undisputed evidence in this case, cannot avail itself of the alleged failure of the appellee to give the written notice provided in the bill of lading, for the reason that the undisputed evidence shows that on November 2, 1918, the attorney for the appellee notified the appellant of the failure to furnish appellee a car which he had ordered for the shipment of his cattle October 9, 1918. In this letter he advised the appellant of the damages he had sustained by reason of such failure to furnish him a car and gave an itemized statement of the same and requested the appellant to advise the appellee as to what disposition it would make of the claim.

On February 8, 1919, the appellant advised the appellee that his claim had been given thorough investigation, and that appellant had declined to settle for the reason that the failure to furnish the car was due to shortage of cars and for the further reason that appellant's station agent had not promised a car for any particular date or market.

In *St. L. S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154, there was an interstate shipment and a similar provision to the one under consideration. We held in that case that the provision as to notice could be waived. But since then the Supreme Court of the United States has decided that where administrative questions are involved they cannot be waived. The decisions of the Supreme Court of the United States are controlling. *Penn. Ry. Co.* v. *Puritan Coal Mining Co.,* 237 U. S. 121; *Penn. Ry. Co.* v. *Sonman Shaft Coal Co.,* 242 U. S. 120; *Ga., Fla. & Ala. Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190.

In the last mentioned case the Supreme Court held that the provision in the contract as to notice similar to the one under review could not be waived.

But, while this provision of the contract as to notice cannot be waived, yet no particular form of notice is prescribed, and the letter of the appellee's attorney to appellant's claim agent was a sufficient compliance with the provisions of the contract as to notice. The letter of the claim agent in response shows that the appellant so construed it.

As was said by the Supreme Court of the United States in *Ga., Fla. & Ala. Ry. Co.* v. *Blish Milling Co., supra,* "Granting that the stipulation is applicable and valid, it does not require documents in a particular form. It is addressed to a practical exigency and is to be construed in a practical way. The stipulation required that the claim should be made in writing, but a telegram, which in itself or taken with other telegrams contained an adequate statement, must be deemed to satisfy this requirement."

The court, in effect, instructed the jury that if they found for the appellee they should assess his damages at such sum as they might find from the evidence would fairly and reasonably compensate him for the loss, if any, sustained by the negligence, if any, of the appellant in failing to furnish the car and further instructed them that in determining this they should take into considera-

tion the excess shrinkage and the decline in market from the day the stock should have reached the market without delay up to the time they were put on the market in this instance, and extra expense, if any, which the appellee had sustained for feed occasioned by the delay. The instruction properly limited the amount of damages to be recovered by the appellee to such damages as were the direct and proximate result of appellant's negligence, if any, in failing to furnish the car.

The instruction correctly enumerated the elements of damage which the testimony tended to prove appellee had sustained by reason of the alleged negligent failure to furnish the car. The instruction is in harmony with the law upon the subject as announced in our own cases and in the authorities generally. *St. L., I. M. & S. Ry. Co.* v. *Mudford,* 48 Ark. 502; *St. L., I. M. & S. Ry. Co.* v. *Coolidge,* 73 Ark. 112; *C., R. I. & P. Ry. Co.* v. *Miles,* 92 Ark. 574.

The damages caused by delay after the cattle are in transit would be the same whether the cause of action were one sounding in tort for an alleged negligent failure to furnish cars, or whether it were a cause of action *ex contractu* for failure to ship promptly.

"The damages recoverable against a common carrier for delay in transporting live stock are limited to the expense, keep, shrinkage, and depreciation in the value of the stock during such delay." 4 R. C. L. 389. See, also, 10 C. J. 77.

There was no reversible error in the rulings of the trial court. The judgment is, therefore, affirmed.